PATRICK B. SCHIEL *v*. COOK COUNTY,

and

'PATRICK B. SCHIEL *v*. THE CITY OF CHICAGO.

*Filed at Springfield March 30, 1891.*

PRIMARY ELECTIONS—*compensation of judges and clerks—liability of county or city.* There is no legal liability upon either a county or city to pay a per diem to the judges and clerks, or to pay other expenses incurred at primary elections held under the act of 1889, such elections being purely voluntary.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

Mr. WILLIAM C. NIBLACK, and Mr. S. S. GREGORY, for the appellant.

Mr. W. G. EWING, for the appellee Cook county.

Mr. JONAS HUTCHINSON, and Mr. MORRIS ST. P. THOMAS, for the appellee the city of Chicago.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The question presented by the record in the first entitled cause is, whether under the act of 1889, providing for the. holding of primary elections by voluntary political parties or associations, the judges and clerks of such primary elections,

and performing their duty thereat, are entitled to compensation therefor, to be paid out of the county treasury. The question in the second is, whether the city is liable for such services.

No provision whatever is made in the act for compensation to the persons who shall act as judges and clerks of such primary elections, nor is there any provision rendering applicable to such elections the provisions for compensation contained in the general Election law. The act would seem to be a complete code within itself, providing for the free, fair and uncorrupted exercise by the voter of his choice of candidates of his party at the approaching election, or for his representatives in the convention or caucus of his party thereafter to be held. The adoption of the mode prescribed by the act is purely voluntary with the party or its controlling committee or board, and may be adopted at one election and omitted at another, at its pleasure or convenience. Any party, however large or insignificant its members, as compared with the whole body of voters in the territory within which the officer is to be chosen, may, by conforming its notice to the requirements of the act, hold its primaries under it, while all others may omit to do so, and select their candidates in such mode as shall to them seem most desirable. When, however, the primary election system has been adopted, and the machinery provided has been put in motion by competent authority within the political party or association of individuals, the act prescribes the qualifications of voters at such primary, the manner in which the election shall be conducted and the result ascertained and declared, and lays down rules and regulations in respect thereof, intended to prevent fraud and corruption, and secure in the result the honest expression of the will of the qualified voters. Similar laws have been enacted in a large number of the States of the Union, and the power of the legislature to enact them has never been questioned, so far as we are aware.

Whatever tends to corrupt elections in a free government, or detracts from the efficiency and honesty of the public service, must needs be a matter of grave public concern, and all methods which have for their object the prevention of those abuses, which every good citizen has observed with profound apprehension, by which incompetent and corrupt men have been chosen to offices of trust and power, should be commended and upheld; and we agree with counsel that liberal construction should be given to all laws having for their object the selection of candidates for the suffrage of the people by the uncorrupted and honest choice of the party or association of voters selecting them, as well as to all other laws intended to conserve the purity of our elective system. But however wise and beneficent this law may be considered, such considerations can furnish no excuse for the appropriation of the public funds by these mere political and governmental agencies to uses not authorized by law. Counties are mere political subdivisions of the State for governmental purposes, and towns, villages and cities are mere instrumentalities of government, and each may levy and collect taxes for purposes granted them by law, and may appropriate their revenues to such uses as are prescribed by the legislature, and no other.

It is, however, insisted, that because the Primary Election law provides that where there is a board of election commissioners under the act regulating the holding of elections in cities, villages and incorporated towns, in force July 1, 1885, and which has been adopted in the city of Chicago, such board of election commissioners shall designate and appoint the judges of the primary election from among the judges appointed under said Election law, so far as they represent the political party desiring to hold such primary election, and therefore such judges, being in discharge of a legal duty, are entitled to compensation, as provided for in the Election law.

Section 124 of said act in relation to elections (3 Starr & Curtis, 282,) provides: "All judges and clerks of election, and

official ticket holders, *under this act*, shall be allowed and paid' at the rate of three dollars per day." Section 127 of the same act provides : "At all general county and State elections, which include officers elected through the whole county, though other than State and county officers are also elected, and at all exclusively judicial elections, and at all special elections for a county or State officer, or member of Congress, or member of ' the legislature, such county shall pay such judges and clerks of election, and official ticket holders, for their services, under this act."

It will be observed that in both sections the right to receive and the liability of the county to pay are for services under that act, and neither the right nor liability can be extended without some legislative sanction. The fallacy of the contention of counsel is apparent when it is considered that primary elections are purely voluntary, and although the judges appointed under the Election law, in cities and villages, may be designated in the first instance to conduct the same, no provision is made anywhere for compensation for services rendered under the Primary Election law. We think it apparent that the legislature intended simply to provide a legal mode by which any political party or association of persons might ascertain the will of its members in choosing its candidates and representatives, and to prevent and punish fraud and corruption in such selection, and there is nothing in this legislation that directly or by implication charges the public revenues of the county or city with the expense, if expense there be, in conducting such primaries. Presumably the judges selected by the board of election commissioners for general elections are qualified, and possess the requisite probity and integrity to properly conduct the same, and by the requirement that they be selected it was sought to throw additional safeguards around primary elections, by selecting, as far as practicable, competent and honest men to conduct them, leaving the matter of compensation to be adjusted by the party or association inter-

4—137 ILL.

ested, where patriotism or party fealty did not furnish sufficient incentive for the performance of the duty. No penalty is attached by this act to the failure or refusal of the judge so appointed or selected to serve, while ample provision is made for selection from the bystanders of both judges and clerks to fill the places of those named in the notice provided for, where there is no election commission, as well as those designated by that board, where the same exists, who fail or refuse to serve.

It is said that if the county is not liable, the per diem of judges and clerks at primary elections held under said act must be paid by the city of Chicago, within which such election was held. This contention is based upon the provision of the election law of 1885, (3 Starr & Curtis, sec. 123, p. 382,) as follows: "All expenses incurred by said board of election commissioners shall be paid by such city,"—that is, by the city which should adopt that act, and the mode of conducting elections therein prescribed. It is clear that this provision can have no application. The per diem of judges and clerks of election is specifically provided for by section 124 of the act, while section 127 provides out of what fund they shall be paid. Moreover, there is and can be no warrant for holding that merely because the commissioners are to designate certain judges and clerks who may discharge the duty at such primaries, an "expense" is thereby incurred by the board. The language of this provision is referable to expenses incurred by the board in the performance of the duties imposed upon them by that act.

We are of opinion that there is no legal liability upon either the county or city to pay a per diem to the judges and clerks, or to pay other expenses incurred at primary elections held under the act in question, and that the demurrer to plaintiff's declaration in each case was properly sustained. The judgment in each case is affirmed.

*Judgment affirmed.*